IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANAHITA MUKHERJI,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LOREN K. MILLER, in his official capacity as Director, Nebraska Service Center, U.S. Citizenship and Immigration Services; and UR MENDOZA JADDOU, in her official capacity as Director, U.S. Citizenship and Immigration Services,<br><br>                    Defendants. | **4:24CV3170**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's motion for summary judgment, Filing No. 19, and Defendants' motion for summary judgment, Filing No. 21.  Plaintiff, an Indian national, sought the highest preference "extraordinary ability" immigrant worker classification from USCIS on the basis of her work as a journalist.  On March 8, 2024, Plaintiff filed an I-140 petition seeking to qualify as an individual of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A).  Filing No. 1 at 2.  USCIS denied Plaintiff's petition for the "extraordinary ability" immigrant classification.  Plaintiff challenges that finding as arbitrary and capricious under the Administrative Procedure Act ("APA").[1]

---

[1] The "Initial Evidence" section of Volume 6, Part F, Chapter 2 of the USCIS Policy Manual, concerning "Two-Step Evidentiary Review" states as follows:

> The first step of the evidentiary review is limited to determining whether the evidence submitted with the petition meets the regulatory criteria. The evidence must be comprised of either one-time achievement (that is, a major, internationally recognized award) or at least three of the ten regulatory criteria or be comparable to at least three of the ten regulatory criteria. The officer should apply a preponderance of the evidence standard when making this determination.

> For purposes of the first step of the analysis, officers should consider the quality and caliber of the evidence to determine whether a particular regulatory criterion has been met, to the extent the criterion has qualitative requirements. Officers should not yet make a

1

**LEGAL STANDARDS**

**A.  Summary judgment under the APA**

In a case under the APA, "summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Friends of Animals v. Ross*, 396 F. Supp. 3d 1 (D.D.C. 2019) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)).  When conducting a review under the APA, the district court "sits as an appellate tribunal" and the "entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

"It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004).  "By confining judicial review to the administrative record, the APA precludes the reviewing court from conducting a de novo trial and substituting its opinion for that of the Agency." *Id.* (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).  Agency action is required to be upheld on review unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

**B.  Arbitrary and Capricious**

An agency decision is arbitrary and capricious if "the agency acted outside 'the bounds of reasoned decision making,'" *Russellville Legends LLC v. United States Army Corps of Eng'rs*, 24 F.4th 1192, 1196 (8th Cir. 2022) (quoting *Dep't of Com. v. New York*,

---

determination regarding whether or not the person is one of that small percentage who have risen to the very top of the field or if the person has sustained national or international acclaim.

588 U.S. 752 (2019)), "relied on factors which Congress has not intended it to consider," provided an explanation "that runs counter to the evidence," or makes a decision that is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*, 812 F.3d 648, 651 (8th Cir. 2016) (citing *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) ("*State Farm*").

This standard is deferential to the agency. It is not enough that the court would have come to a different conclusion than the agency. *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). Instead, the court reviews the agency's decision to determine if it "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Id.* (citing *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)).

A decision is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. "Under the APA, review of an agency decision is limited. "The reviewing court decides whether the agency's decision was 'based on consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *Voyageurs Nat. Park Ass'n*, 381 F.3d at 763). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43.

3

**DISCUSSION**

**A.  History and the two step analysis**

In 1990, Congress sought to facilitate the immigration of highly talented aliens to the United States by creating a new employment-based immigration preference for those of "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." IMMIGRATION ACT OF 1990, PL 101–649, November 29, 1990, 104 Stat 4978. This classification is known as "EB-1A."  8 U.S.C. § 1153(b)(1)(A).  The INA provides for the allocation of immigrant visas to such persons if the alien "seeks to enter the United States to continue work in the area of extraordinary ability," and the alien's "entry into the United States will substantially benefit prospectively the United States."  8 U.S.C. § 1153(b)(1)(A).

When Congress created the "extraordinary ability" category, according to a House report, it intended it "to be reserved for that small percentage of individuals who have risen to the very top of their field of endeavor."  H.R. Rep. 101-723, at 59 (Sept. 19, 1990). To show extraordinary ability, the statute requires a showing that the applicant possesses "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation."  8 U.S.C. § 1153(b)(1)(A).  Plaintiff applied for the "employment based" classification under the Immigration and Nationality Act.

4

The Immigration and Naturalization Service issued a legislative rule through notice and comment rulemaking defining extraordinary ability to mean "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).  To meet the stricter definition of "extraordinary ability," the petitioner must submit evidence that he or she "has sustained national or international acclaim and that his or her achievements have been recognized 8 C.F.R. § 204.5(h)(3).  Such documentation may include evidence of a one-time achievement—that is, a major, internationally recognized award such as an Olympic gold medal or a Nobel or Pulitzer Prize, or it may include evidence that satisfies at least three of ten specific criteria intended to identify benchmarks for determining "extraordinary ability." 8 C.F.R. § 204.5(h)(3).  That is, in the absence of evidence of a one-time achievement, a petitioner may qualify by submitting evidence of at least three of the following:

    (i)      Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

    (ii)     Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

    (iii)    Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought.  Such evidence shall include the title, date, and author of the material, and any necessary translation;

    (iv)    Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

    (v)     Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

5

(vi)    Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii)   Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii)  Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix)    Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x)     Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3); *see Matter of Price*, 20 I. & N. Dec. 953, 954 (BIA 1994).  Should

a petitioner believe that the enumerated criteria "do not readily apply to [her] occupation,

the petitioner may submit comparable evidence to establish [her] eligibility."  8 C.F.R. §

204.5(h)(4).

USCIS now follows a two-step analysis of the petitioner's evidence in adjudicating

EB-1A petitions.  First, it determines whether the petitioner provided evidence of a one-

time achievement or evidence satisfying at least three of the ten regulatory criteria.  *See*

*Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1121 (9th Cir. 2010).  If so,

USCIS then considers the totality of the evidence to make a final merits determination

regarding the petitioner's qualifications and achievements.  Volume 6, Part F, Chapter 2

of the USCIS Policy Manual.  At this second step, the evidence must demonstrate

"sustained national or international acclaim" and establish that the petitioner is one of a

small percentage who has risen to the very top of their field of endeavor to be eligible for

extraordinary ability designation.  8 U.S.C. § 1153(b)(1)(A)(i); 8 C.F.R. § 204.5(h)(2).

6

### B.    PLAINTIFF'S ARGUMENTS

Plaintiff summarizes her arguments from her Motion for Summary Judgment as follows:

- Congress created the priority worker extraordinary ability classification in Section 121(a) of the Immigration Act of 1990;

- Legacy-INS promulgated implementing regulations in late November 1991, which are codified at 8 C.F.R. § 204.5(h);

- In 1995, Legacy-INS published a proposed final rule that created a two-step adjudication process for EB-1A petitions, but the rulemaking never proceeded to the final action stage. In this 1995 NPRM, Legacy-INS classified the change as a "substantive rule";

- Adjudications under 8 C.F.R. § 204.5(h) remained largely unchanged from 1991 through 2010, when USCIS adopted its *Kazarian* Policy after the Ninth Circuit issued its decision in *Kazarian*, 596 F.3d 1115;

- In its 2010 Memorandum adopting the *Kazarian* two-step process, Defendant USCIS claimed that it was not a legislative rule change, despite changing the manner of EB-1A adjudications that had been in place for nineteen (19) years.

*See* Plaintiff's Reply Brief, Filing No. 22 at 9.

Plaintiff offered evidence to satisfy five of the different categories.  The USCIS denied Plaintiff's claim, finding that while she met the requirement for the five categories (only three were needed), she failed to show that she met the extraordinary ability standard.  USCIS explained that Plaintiff failed to establish "the high level of expertise required for the E11 immigrant classification."  This denial was made through the agency's "final merits determination."  *See* Filing No. 1-2, Ex. A.

Plaintiff contends that this "final merits" determination is not found in statute or regulation and is taken from the Ninth Circuit's decision in *Kazarian*, which USCIS

adopted as a nation-wide policy on December 22, 2010.  Filing No. 22 at 9–10.  The

adoption of this policy was a violation of the APA, argues Plaintiff.

## C.    DEFENDANTS' ARGUMENTS

Defendants contend that in the second step of the analysis, the officer should

consider the petition in its entirety to determine eligibility according to the standard.  To

establish eligibility, the petition must demonstrate that the person has sustained national

or international acclaim and that their achievements have been recognized in the field of

expertise, indicating that the person is one of that small percentage who has risen to the

very top of the field of endeavor.  The officer applies a preponderance of the evidence

standard when making this determination.

An officer may not limit the kind of evidence the officer thinks the person should be

able to submit and deny the petition if that particular type of evidence (whether one of the

prescribed types or comparable evidence) is absent, if the person nonetheless submitted

other types of evidence that meet the regulatory requirements for the classification.  6

USCIS Policy Manual F.2, https://www.uscis.gov/policy-mnual/volume-6-part-f-chapter-2

(last visited Dec. 23, 2025) (internal footnotes omitted).

## D.    COURT'S ANALYSIS – Two Step Framework

The statutory requirements are:

(i) the alien has extraordinary ability in the sciences, arts, education,
business, or athletics which has been demonstrated by sustained national
or international acclaim and whose achievements have been recognized in
the field through extensive documentation, (ii) the alien seeks to enter the
United States to continue work in the area of extraordinary ability, and (iii)
the alien's entry into the United States will substantially benefit prospectively
the United States.

8 U.S.C. § 1153(b)(A)(i), (ii), and (iii).  Review for whether agency action is "not in

accordance with law" under 5 U.S.C. § 706(2)(A) is reviewed de novo like any other issue

8

of law. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ("The Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Additionally, informal agency adjudications may also be reviewed for whether they are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

The definitive issue before the Court is whether the defendants properly created this two-step process for determining eligibility for this group of special applicants. The Court is not permitted, in this analysis, to determine the merits of the plaintiff's application. The Court must only review the legal issue of the creation and use of the two-step process.

When the Agency initially started the rulemaking process for this two-step analysis, it viewed the process as substantive. 8 C.F.R. § 204.5(h)(3). The Office of Personnel Management's docket for the 1995 NPRM—RIN 1115-AD55—shows that: (1) this NPRM was classified as a substantive rule; and (2) that the rulemaking process never proceeded to the final action stage. Many years later in 2010, the agency published an interim policy memorandum with a 14-day comment period, followed by a final memorandum—neither of which went through the APA's notice and comment in accordance with 5 U.S.C. § 553—to adopt the agency's stance that it would now require a second-step showing beyond the analysis required by 8 C.F.R. § 204.5(h)(3) which the agency referred to as a "final merits determination." In addition, "[t]he Ombudsman recommended that USCIS conduct formal rulemaking to, among other things, explicitly incorporate a final merits determination component into the regulations, in that 'USCIS could promulgate regulations to formally

9

establish an objective two-part *Kazarian*-derived test as the standard.'" Filing No. 20 at 14. No such rulemaking has ever occurred.

"Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109 (2022); *accord Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress."). "[A]n order of [an agency] made in excess of its delegated powers" is an action not "made within its jurisdiction." *Leedom v. Kyne*, 358 U.S. 184, 188 (1958). Such an action is "ultra vires agency action." *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 763–64 (D.C. Cir. 2022). And as has long been understood, an act without jurisdiction is void. *Harris v. Hardeman*, 55 U.S. 334, 339 & 342 (1852).

The agency cited its statutory rulemaking delegation, 8 U.S.C. § 1103(a), as the authority for the publication of the final memorandum. *Id.*, Subject: Evaluation of Evidence Submitted With Certain Form I-140 Petitions; Revisions To the Adjudicator's Field Manual Chapter 22.2, Afm Update Ad11-14, 2010 WL 5597716. The Agency published a Memorandum in this regard creating the two-step process indicating that "two-part adjudicative approach" that requires a secondary analysis beyond that required by 8 C.F.R. § 204.5(h)(3). The agency made zero recognition of the fact that it was discarding the prior single-part adjudicative approach it had used for nearly twenty years. *Id.* The only support offered by the Agency was a case decided by the Ninth Circuit which created this two-system analysis. *See Kazarian*, 596 F.3d 1115.

With regard to this case, the Agency concluded in its findings that:

> (a) "USCIS has determined that while you have had achievements that have been recognized in your field of expertise, indicating that

10

you were once a part of the small percentage who has risen to the very top of your field; the record does not establish that you have sustained national or international acclaim." (A.R. 00014);

(b) "More specifically, the record lacks sufficient evidence to support your sustained national or international acclaim after 2015." (A.R. 00014);

(c) "[I]t appears that all of your national acclaim as a journalist in the field of arts (public interest journalism) occurred prior to 2016." (A.R. 00014);

(d) [T]he record also includes evidence of your continued work in the field, but USCIS doubts how these experiences have contributed to your sustained national or internation acclaim after 2015." (A.R. 00014);

(e) "USCIS recognizes that you have had original contributions of major significance in the field as supported by various reference letters and corroborated by your receipt of awards and published materials about you and your work. However, as noted previously, the record fails to suggest your receipt of an award or published material about you and your work since 2015." (A.R. 00014);

(f) "As noted previously, the record fails to suggest how you have sustained any national or international acclaim from your work for he [sic] Times of India and for Spaceship Media after 2015." (A.R. 00015-00016);

(g) "[T]he totality of the evidence failed to sufficiently establish, by a preponderance of the evidence, that you have sustained national or international acclaim in the field of the arts (public interest journalism)." (A.R. 00016).

Filing No. 20 at 15–16.

As for the Senate Bill that actually and ultimately ended up becoming the law, the House Conference Report says absolutely nothing about a requirement that persons seeking priority worker extraordinary ability classification need to be part of "that small percentage of individuals who have risen to the very top of their field" or some other formulation to that effect. H.R. CONF. REP. 101-955, 101st Cong., 2d Sess. (Oct. 26, 1990).

11

Further, the Court finds the agency unlawfully adopted its "final merits determination" test without notice and comment rulemaking. The APA, 5 U.S.C. § 553, requires that its notice and comment rulemaking procedures be followed when an agency creates "'legislative' or 'substantive' rules.'" Lincoln v. Vigil, 508 U.S. 182, 196 (1993); Green Rock LLC v. Internal Revenue Serv., 104 F.4th 220 (11th Cir. 2024) ("To enact regulations that have the force of law, a federal agency ordinarily must abide by the notice-and-comment procedures prescribed in the Administrative Procedure Act, 5 U.S.C. § 553(b)."). The Agency initially determined that this was substantive. Years later, the Agency changed this determination and proceeded to adopt the new standards without following any rulemaking process. The Court finds the Agency failed to follow its own rules in this regard.

In addition, the agency arbitrarily and capriciously adopted its "final merits determination" for failure to acknowledge and reason through the fact that it was changing its adjudicative policy. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." Encino Motorcars, LLC v. Navarro, 579 U.S. 211 (2016) (citations omitted). "But the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" Id. "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." Id. That did not happen in this case.

One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions. The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational

12

connection between the facts found and the choice made." *Motor Vehicle Manufacturers Association of the United States, Inc.*, 463 U.S. at 43 (internal quotation marks omitted). That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law. *See* 5 U.S.C. § 706(2)(A); *State Farm*, 463 U.S. 29. *Encino Motorcars, LLC*, 579 U.S. 211. The Court stated in *Encino*:

> Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change. When an agency changes its existing position, it "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." But the agency must at least "display awareness that it is changing position" and "show that there are good reasons for the new policy." In explaining its changed position, an agency must also be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account." "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." It follows that an "[u]nexplained inconsistency" in agency policy is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." An arbitrary and capricious regulation of this sort is itself unlawful and receives no Chevron deference.

*Encino Motorcars, LLC*, 579 U.S. 211 (internal citations omitted).

The law requires that "agenc[ies] must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy,'" *Encino Motorcars, LLC*, 579 U.S. 211 (citation omitted), such that "an unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice," *id.* "An arbitrary and capricious regulation [/interpretation

of a regulation] of this sort is itself unlawful and receives no Chevron[/Auer] deference."

*Encino Motorcars, LLC*, 579 U.S. 211 (citation omitted).

Finally, the Court must acknowledge the recent *Loper* case wherein the Supreme Court recently diminished the validity of Chevron.  As stated in *Loper*:

> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment.  It specifies that courts, not agencies, will decide "all relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions. That omission is telling, because Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential. *See* § 706(2)(A) (agency action to be set aside if "arbitrary, capricious, [or] an abuse of discretion"); § 706(2)(E) (agency factfinding in formal proceedings to be set aside if "unsupported by substantial evidence").

*Loper Bright Enterprises*, 603 U.S. at 391–92.

In summary, the Court finds the adoption of the two-tiered system by the Agency did not follow the required law.  First, there was no notice discarding the policy that had been in place for 20 years.  Second, the Agency changed its position adopting the legal analysis of the Ninth Circuit in *Kazarian*.  Third, the final merits determination provided no notice and comment.  Fourth, the Court finds that this change after 20 years is legislative, not interpretive, and even the Agency itself at one time found it to be legislative/substantive.  Fifth, the Agency failed to clearly articulate a clear and justified reason for the policy change, after 20 years of using its original policy.  Adequate reasons were simply not articulated by the Agency.  This clearly violates the legal requirements set forth herein.  Such failure makes the decision arbitrary and capricious.  This is a long-standing policy.  The Agency is free to change their policies in some circumstances, but

14

they must articulate their reasoning. Last, the Court determined in *Loper* that there is very limited *Chevron* deference now. All questions of law will be determined by the Court. These are clearly questions of law, not facts. Accordingly, for these reasons, the Court finds the two-tier analysis was not valid at its inception.

### E. Arbitrary and Capricious Finding

Although the above findings are more than sufficient to find the Agency was arbitrary and capricious, in the alternative, the plaintiff argues that she clearly met the requirements set forth by Congress. The plaintiff presents APA claims that Defendant USCIS improperly rejected evidence of her qualifications under 8 C.F.R. § 204.5(h)(3). Plaintiff filed an I-140 petition seeking to qualify as an individual of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A). USCIS denied Plaintiff's petition for the "extraordinary ability" immigrant classification. Plaintiff challenges that finding as arbitrary and capricious under the Administrative Procedure Act ("APA").

That classification is defined by statute as follows:

An alien is described in this subparagraph if—

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or inter- national acclaim and whose achievements have been recognized in the field through extensive documentation,

(ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

(iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).

The Agency found with regard to Plaintiff in this case that:

(1) that she has demonstrated her "[d]ocumentation of [her] receipt of lesser nationally or internationally recognized prizes or awards for excellence in

the field of endeavor," § 204.5(h)(3)(i); (2) "[p]ublished material about [her] in professional or major trade publications or other major media, relating to [her] work in the field for which classification is sought," § 204.5(h)(3)(iii); (3) "[e]vidence of [her] participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought," § 204.5(h)(3)(iv); (4) "[e]vidence of [her] original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field," § 204.5(h)(3)(v); and (5) "[e]vidence that [she] has performed in a leading or critical role for organizations or establishments that have a distinguished reputation," § 204.5(h)(3)(viii).

Filing No. 20 at 14, *see also* Filing No. 15 at 11. The Agency then determined that Plaintiff failed to support the criterion: "§ 204.5(h)(3) ('Documentation of [her] membership on [sic] associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields')." Filing No. 20 at 15, *see also* Filing No. 15 at 18.

The Court is very aware of its limited review in this case. However, the Court determines that the defendant has acted in an arbitrary and capricious manner. The plaintiff submitted substantial documentation of her excellence, including most impressive letters of recommendation touting her high-level contributions in her journalistic specialty; Plaintiff submitted a number of authorships and co-authorships in her areas of research, although many were discounted by the Agency; and she clearly has a very high level of achievement. The Court has carefully reviewed the decision of the reviewing officer. It is unclear as to why the officer determined that Plaintiff did not meet the "Excellent" level. There is no articulated standard, objective, or specific criteria upon which this Court can judge why she did not meet the standards. "If the officer determines that the petitioner has failed to demonstrate eligibility, the officer should not merely make general assertions regarding this failure. Rather, the officer must articulate the specific and legal reasons as to why the officer concluded that the petitioner has not demonstrated by a preponderance

16

of the evidence that the person has extraordinary ability." USCIS Policy Manual, Vol. 6, Part F, Chapter 2 (December 22, 2025), https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2. If the reviewing officer fails to delineate the specific and legitimate reasons for the denial, then that is an arbitrary and capricious decision. Here, the reviewing officer failed to articulate the required standard and the failure to meet that standard by the plaintiff. Nor does the statute say anything about an individual being required to stay indefinitely at the top of their field. It is clear that the Plaintiff in this case was at the top of her field. No one argues that is not accurate. The Agency based its decision on whether she continuously received awards recognizing her status or kept up with that level of production. The Court finds nothing in the statutory scheme that would support such a finding. Accordingly,

The Court vacates the Agency's denial and remands the petition to the Agency with instructions to approve the petition because there is nothing else left for the Agency to do.

**THEREFORE, IT IS ORDERED THAT:**

1.  Plaintiff's motion for summary judgment, Filing No. 19, is granted.

2.  Defendants' motion for summary judgment, Filing No. 21, is denied.

3.  The Secretary's decision is set aside. The Court vacates the Agency's denial and remands the petition to the Agency with instructions to approve the petition.

Dated this 28th day of January, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge